JEREMIAH WILLIAMS & others *vs.* MANNHEIM INSURANCE COMPANY.

Suffolk.    November 12, 1920. — March 1, 1921.

Present: RUGG, C. J., BRALEY, DE COURCY, CROSBY, & PIERCE, JJ.

*Insurance,* Flood, "Transportation," Fire. *Evidence,* Admission. *Words.* "Transportation."

A policy of insurance issued to a firm of Boston wool merchants, who purchased wool "in the grease" in California and sent it for grading, blending, scouring and baling to a certain mill in that State situated about half a mile from a

railroad, whence it was to be shipped to destinations as ordered by the merchants, insured the merchants "against any and all risks of inland and lake navigation (including the Sound Steamers) fire and transportation, and to attach upon said property wherever it may be, whether ashore or afloat, or in railway cars, as soon as it is at the risk of the assured or their agents, from points in the United States to ports or places on the Atlantic or Gulf coasts, and to other points in the United States and / or until actually delivered to the assured at (but not in) their wool stores or warehouses in Boston, Mass., or to their customers. . . ." Further provisions of the policy were: "This policy also covers shipments of wool . . . when made by the assured from their own warehouses or other points to their customers in other parts of the United States to whom they have agreed to deliver such Merchandise. It is the intent of this insurance to fully indemnify the assured for any and all losses and damages, general average and salvage charges and expenses caused by the risks and perils insured against. . . ." By other clauses of the policy reference was made to "the Carrier or other party in whose custody the property may be at the time of such loss," to "the possession of any carrier or other bailee," to "any carrier or other bailee," and to "carrier or bailee." Owing to crowded conditions at the mill, the grading, blending, scouring and baling of the wool there were much delayed and some of it had remained there for eight months in storage. The mill made no separate charge for storage of the wool. While it was in storage, owing to an unprecedented flood, the wool was damaged. *Held*, that

(1) It was not necessary to consider *whether*, if the wool had been burned while in the storage, the insurer would have been liable because of the general indemnity clause against loss by fire;

(2) The storage of the wool was not incident to its transportation;

(3) The damage by the flood while the wool was in storage in the circumstances was not a "risk of . . . transportation" and was not covered by the policy;

(4) Evidence in an action upon the policy for the loss by flood above described tending to show that the insurer had paid the insured for damage occurring while wool insured under a like policy was in storage in similar circumstances in another city at the time of a great conflagration, even if competent, would not support a finding for the insured.

CONTRACT upon a policy of insurance for loss suffered by the plaintiffs by reason of damage by a flood to wool alleged to have been covered by the policy. Writ dated March 3, 1908.

In the Superior Court the action was heard by *Hitchcock*, J., without a jury, upon an agreed statement of facts and the testimony of two witnesses. Material facts are described in the opinion. At the close of the evidence, the defendant moved for a finding in its favor. The judge found for the plaintiffs in the sum of $10,431.63; and the defendant alleged exceptions, which, after the death of *Hitchcock*, J., were allowed by *Wait*, J.

*P. B. Buzzell*, (*A. Hemenway* with him,) for the defendant.

*D. A. Ellis*, (*S. M. Whalen* with him,) for the plaintiffs.

RUGG, C. J. This is an action upon a contract of insurance. The plaintiffs are wool merchants in Boston. The material facts as to the method of business, custom of the trade, the initial purchases of wool in California, the intention of the plaintiffs as buyers ultimately to send it to Boston, its carriage to scouring mill and warehouses in Stockton in California, the processes to which it there was subjected, and its damage while in mill and warehouses by flood, are the same as in *Koshland* v. *Columbia Ins. Co. ante,* 467, just decided. They are set out at length in the opinion in that case, to which reference is made for their statement in detail and need not here be repeated.

The plaintiffs, at the time of the damage to their wool by flood, were insured by the policy issued by the defendant. The terms of the rider annexed to the policy insured the plaintiffs "on wool and bags also camel's hair wool, noils and yarns, . . . against any and all risks of inland and lake navigation (including the Sound Steamers) fire and transportation, and to attach upon said property wherever it may be, whether ashore or afloat, or in railway cars, as soon as it is at the risk of the assured or their agents, from points in the United States to ports or places on the Atlantic or Gulf coasts, and to other points in the United States and/or until actually delivered to the assured at (but not in) their wool stores or warehouses in Boston, Mass. or to their customers. . . . This policy also covers shipments of wool and similar Merchandise when made by the assured from their own warehouses or other points to their customers in other parts of the United States to whom they have agreed to deliver such Merchandise. It is the intent of this insurance to fully indemnify the assured for any and all losses and damages, general average and salvage charges and expenses caused by the risks and perils insured against." By other clauses of the policy reference is made to "the Carrier or other party in whose custody the property may be at the time of such loss," to "the possession of any carrier or other bailee," to "any carrier or other bailee," and to "carrier or bailee." In reaching a decision all parts of the policy must be considered and the established customs of the business conducted by the insured, so far as light may be thrown from any of these sources upon the precise point to be determined. The controlling principles of law and a review and citation of the relevant authorities

are stated at length in the opinion in *Koshland* v. *Columbia Ins. Co. ante,* 467. They need not be repeated. They are invoked as the guide for the decision of the case at bar without further detailed reference.

The places where the goods are protected under the policy are wide. All places within the United States are comprehended as points of departure and, as points of destination, any and all ports or places on the Atlantic or Gulf coasts and all other places within the United States, or while the goods are on their way to delivery to the warehouse of the insured in Boston or to their customers elsewhere within this country. The location of the goods while insured may be afloat or ashore or in railroad cars. The risks against which there is insurance are those arising from three distinct sources: (1) inland or lake navigation, (2) fire, (3) transportation. The risks of inland and lake navigation need not be discussed because no loss was suffered therefrom. Those risks are confined to a wholly different place and a divergent class of dangers from that here involved. Subject to any statutory limitations (see R. L. c. 118, §§ 29, 80, now G. L. c. 175, §§ 47, 51, 152 *), the risk of loss from fire is not limited in any respect by the terms of the policy but is as extensive as to time and place as the broadest sweep of the other phrases of the policy. The provisions respecting protection of the goods against loss while in the custody of a bailee as well as of a carrier have ample scope for their operation in regard to fire risk. To that they naturally are applicable. The case calls for the construction and application of the indemnity clause of the policy against loss caused by risks of "transportation." It is not necessary to review the decisions in which the word "transportation" has been given a large meaning. The insurance at bar is against a "risk of . . . transportation," not against all risks which may befall in the course of transportation. It is not necessary to consider whether if the wool had been burned while in the mill and warehouses at Stockton, the defendant would be liable because of the general indemnity clause against loss by fire. Doubtless loss by flood while the wool was on the way by train or team from the point of its initial shipment by the grower to the plaintiffs at the Stockton warehouses would have been within the pro-

* See also St. 1921, cc. 215, 277, approved after this decision.

tection of the policy, because flood under such circumstances would be a peril of transportation. Risks of transportation under the circumstances here disclosed include those which occur during the course of carriage of goods from one place to another, including such transfers, transhipments and other delays as fairly may be incident to such carriage. The wool in question was not in storage as a part of or incident to transportation. It was there for the purpose of undergoing treatment in order to fit it to be merchantable. That treatment included processes essential to preparation for its sale to the trade and for its use in manufacture. These processes included a sorting of the wool from different fleeces and separating it into various grades according to quality, a combining of the wool of similar quality previously separated by the process of sorting, cleansing the wool from its impurities by scouring, and baling the wool by compressing it into compact packages of convenient size for handling. These processes savor of manufacture or trade rather than of transportation. If it had been the intention of the parties to insure against losses while the wool was in storage and mill for these purposes, it would have been easy and natural to use words to express that end. Omission of such words is indicative of intent that insurance shall not attach under such conditions. Loss by flood while the wool was in the public warehouses and scouring mill at Stockton to the end that it might there receive the treatment described, cannot fairly be said to be a risk of transportation within the meaning of those words in the policy. The fact that fire loss was paid by the defendant to the plaintiffs for damage occurring while wool insured by a like policy was in storage under similar circumstances at the time of the great San Francisco fire, even if assumed to be competent, is not enough to support a different conclusion.

It follows that the request of the defendant that a finding be made in its favor ought to have been granted. This is a case where upon the agreed facts no other result can be reached. Hence the defendant's exceptions must be sustained and in accordance with G. L. c. 231, § 122, rescript shall direct entry of judgment for the defendant.

*So ordered.*