Hamlin, J.
Pursuant to G.L.c. 213A, plaintiffs Edward and Mary Vecchia brought this action seeking declaratory judgment against defendant Commercial Union Insurance Companies aka Northern Assurance Company of America (“Commercial”). The plaintiffs request that the court declare that Commercial is obligated to provide a defense to the plaintiffs in a separate civil action brought against the plaintiffs. Commercial moves for summary judgment asserting that the plaintiffs’ claims are not covered and therefore it has no duty to defend or indemnify the plaintiffs in the lawsuit brought against them. For the following reasons, the defendant’s motion for summary judgment is ALLOWED.
BACKGROUND
Plaintiffs Edward C. and Mary E. Vecchia formerly owned the property located at 37 Wellington Street, Arlington, MA. From November 16, 1991 to November 16, 1992, the plaintiffs were covered by a homeowners policy (“Policy”) issued by Commercial. The Policy provides in part:
DEFINITIONS
. . . certain words and phrases are defined as follows:
1. “bodily injury” means both bodily harm, sickness, or disease, including required care, loss of services and death that results.
5. “occurrence” means an accident, including exposure to conditions, which results during the policy, in:
a. bodily injury: or
b. property damage.
6. “property damage” means physical injury to, destruction of, or loss of use of tangible property.
SECTION II — LIABILITY COVERAGES
COVERAGE E — Personal Liability
If a claim is made or suit is brought against an “insured” for damages because of “bodily injury” or “property damage” caused by an “occurrence” to which this coverage applies, we will:
1. Pay up to our limit of liability for the damages for which the insured is liable . . .
2. Provide a defense at our expense by counsel . . .
SECTION II — EXCLUSIONS
1. Coverage E — Personal Liability and Coverage F — Medical Payments to Others do not apply to “bodily injury” or “property damage.”
a. Which is expected or intended by the “insured”;
2. Coverage E — Personal Liability, does not apply to:
a. Liability:
(2) Under any contract or agreement. However, this exclusion does not apply to written contracts:
(a) That directly relate to the ownership, maintenance or use of an “insured location”:
(b) Where the liability of others is assumed by the “insured” prior to an “occurrence”;
The plaintiffs also obtained additional personal injury coverage under a Security Plus endorsement which specifically enumerated coverage for injuries arising out of a number of offenses, none of which are at issue here.
On about February 28, 1992, John A. Gage, Judith F. Hoer, and James J. Eckle (the “Buyers”) signed a Standard Form Purchase and Sale Agreement to purchase from the plaintiffs the premises at 37 Wellington Street. Subsequently, the Buyers brought a civil action against the plaintiffs alleging damages resulting from material misrepresentation/fraud and breach of contract. The complaint was later amended asserting a claim of negligent misrepresentation.
In their action against the plaintiffs, the Buyers allege that when the plaintiffs put the home at 37 Wellington Street on the market, they completed a real estate broker’s questionnaire indicating that the only *198 permits pulled for work for the house were in connection with gas and electric meters. The Buyers also allege that on the questionnaire, the plaintiffs indicated that the house did not suffer any fire or smoke damage. Additionally, the Purchase and Sale Agreement contained warranties that the house was in compliance with state and municipal building codes. Title to the home transferred on May 15, 1992. In September 1997, the Buyers allegedly discovered that a fire had occurred in the home in 1974, and that while permits were pulled for repair work, the work was never completed and the damage was covered up.
The plaintiffs notified the defendant of the suit and tendered the complaint and amended complaint to the defendant, requesting that the defendant defend pursuant to the homeowner insurance policy. In a letter dated October 8, 1998, the defendant notified the plaintiffs that it would be unable to defend or indemnify the plaintiffs, stating the claims failed to trigger coverage under the policy.
DISCUSSION
This court grants summary judgment where there are no genuine issues of material fact and where the moving party is entitled to judgment as a matter of law based upon a review of the summary judgment record. Cassesso v. Commissioner of Correction, 390 Mass. 419, 422 (1983); Mass.R.Civ.P. 56(c). The moving party bears the burden of affirmatively demonstrating the absence of a triable issue, and “that the summary judgment record entitles the moving party to judgment as a matter of law.” Pederson v. Time, Inc., 404 Mass. 14, 16-17 (1989). A party moving for summary judgment who does not bear the burden of proof at trial may demonstrate the absence of a triable issue either by submitting affirmative evidence negating an essential element of the nonmoving party’s case or by showing that the nonmoving party is unlikely to submit proof of that element at trial. Flesner v. Technical Communications Corp., 410 Mass. 805, 809 (1991); Kourouvacilis v. General Motors Corp., 410 Mass. 707, 716 (1991). The nonmoving party cannot defeat a motion for summary judgment by resting on its “pleadings and mere assertions of disputed facts ...” LaLonde v. Eissner, 405 Mass. 207, 209 (1989). If a case only involves a question of law, a court will grant summary judgment to the party entitled to judgment as a matter of law. Cassesso, supra at 422.
“A declaratory judgment in an action provides an appropriate means of deciding a dispute concerning the meaning of language in an insurance policy." Lumbermans Mut. Cas. Co. v. Belleville Indus., Inc., 407 Mass. 675, 685 (1990).
It is well settled that a liability insurer owes a broad duty to defend its insured against any claims that create a potential for indemnity. Liberty Mut. Ins. Co. v. SCA Serv., Inc., 412 Mass. 330, 332 (1992). The duty to defend is broader than the duty to indemnify as an insurer may owe a duty to defend its insured in an action in which no damages ultimately are awarded. Boston Symphony Orchestra, Inc. v. Commercial Union Ins. Co., 406 Mass. 7, 10 (1989). “If the allegations of the third-party complaint are ‘reasonably susceptible’ of an interpretation that they state or adumbrate a claim covered by the policy terms, the insurer must undertake the defense.” Liberty Mut. Ins. Co., supra, at 331-32, quoting Sterilite Corp. v. Continental Cas. Co., 17 Mass.App.Ct. 316, 318 (1983). This court's task is to match the complaint against the Policy. Smartfoods, Inc. v. Northbrook Property & Cas. Co., 35 Mass.App.Ct. 239, 241 (1993).
The defendant asserts that it has no duty to defend since the plaintiffs’ claims are not covered under the Policy. More specifically, defendant argues that the claims of misrepresentation/fraud, breach of contract and negligent misrepresentation do not constitute “property damage,” “bodily injury," or an “occurrence” as defined by the Policy.
Without reference to any supporting case law, the plaintiffs argue that the damages in the Buyers’ complaint are not necessarily restricted to damages to the property itself, which would be excluded under the owned-property exclusion. Thus, the plaintiffs assert that damages can be considered the diminution of the value of the investment made by the purchasers at the time of their purchase.
The interpretation of an insurance contract is a question of law for the court. McNeill v. Metropolitan Property & Liab. Ins. Co. 420 Mass. 587, 589 (1995). Likewise, the application of policy language to known facts presents a question of law for the court. Kelleher v. American Mutual Ins. Co. of Boston, 32 Mass.App.Ct. 501, 503 (1992), citing Sherman v. Employer’s Liab. Assur. Co., 343 Mass. 354, 356 (1961).
This court holds that the claims asserted by the Buyers against the plaintiff do not constitute damages resulting from “bodily injury” or “property damage” caused by an “occurrence.” Clearly, the claims submitted by the plaintiffs do not involve bodily injury or personal injury as covered by the Policy. Although the diminution of market value is used to measure property damage, the plaintiffs complaint does not allege property damage as defined by the Policy. Trinity Church in the City of Boston v. John Hancock Mut. Life Ins. Co., 399 Mass. 43, 48 (1987) (at common law, “the general rule for measuring property damage is diminution in market value”). According to the Policy, property damage means physical injury to, destruction of, or loss of use of tangible property. The diminution of value of the investment as asserted by the plaintiffs is an economic loss and is not covered by the Policy. See Smartfoods, Inc., supra at 243 (economic loss due to inability to exploit available property profitably found not to be within the scope of property damage coverage).
It should be noted that in Continental Cas. Co. v. Gilbrane Building Co., the Supreme Judicial Court *199 held that the term “property damage” in an insurance policy “does not require actual physical damage but can include Intangible damage such as the diminution in value of tangible property.” 391 Mass. 143, 147-48 (1984). However, unlike the policy in Continental Cas. Co., in which the term “property damage” was not defined by the policy to include physical injury, the Policy in the case at hand specifically incorporates such definition. See Id. at 147.[3]
Even if the damage claimed falls within the definition of “property damage,” this court finds that there is no property damage caused by an “occurrence.” The Policy defines an “occurrence” as an “accident, including exposure to conditions, which results in . . . property damage.” The claims for breach of contract and fraud do not constitute an “occurrence” as defined by the Policy since these claims are not based on an “accident.” Additionally, the defendant has no duty to defend against claims for intentional torts when coverage only affords claims for negligence. See Doe v. Liberty Mutual Ins. Co., 423 Mass. 366, 370-71 (1996). Accordingly there is no coverage under the Policy for damage that is intended or expected.
Although the negligence claim may be the result of damage that is unintended or unexpected, losses caused by the plaintiffs’ alleged negligent misrepresentations or breach of contract are not “damages because of . . . property damage caused by an occurrence” covered by a liability policy. Aetna Casualty & Surely Co. V. Cotter, 26 Mass.App.Ct. 56, 59 (1988) (no coverage for misrepresentations which do not constitute bodily injury or property damage independent of conditions or acts which are themselves the consequences of negligence). See also SCA Disposal Services v. Central National Ins. Co. of Omaha, Civil No. 900393, 2 Mass. L. Rptr. 44 (Suffolk Super. Ct. April 12, 1994) (summary judgment granted to insurance company on the issue of duty to defend insured against claims for misrepresentation and breach of contract after holding no causal connection between the misrepresentation in the sale of properly and the properly damage at the site); Safeco Ins. Co. of America v. Andrews, 915 F.2d 500, 502 (9th Cir. 1990) (holding there is no coverage for a claim of misrepresentation against the insured seller of a home for failure to disclose defects in the home to the buyer). Because the alleged occurrence in this case is the misrepresentation concerning the preexisting fire damage, the cause of the damage does not constitute an occurrence as covered by the Policy.
Since the Buyers’ complaint does not state a claim for damages on account of property damage caused by an occurrence, Commercial is entitled to summary judgment on the issue of the duty to defend the plaintiffs against the claims for fraud/misrepresentation, negligent misrepresentation, and breach of contract.
ORDER
It is therefore ORDERED that the defendant’s motion for summary judgment is ALLOWED.

See also American Home Assur. v. Libbey-Owens Ford Co., 786 F.2d 22, 25 (1st Cir. 1986) (deciding case on other grounds, but stating: “The [trial] court noted that although a number of courts have held that intangible losses, such as the loss of use or diminution of value, are 'property damage,’ ... all such decisions had interpreted policy language defining property damage as 'injury to tangible property' rather than 'physical injury to tangible property.' In cases in which courts have interpreted more recent policies in which property is damaged is defined as ‘physical injury' to tangible property, such courts have held that intangible damages, such as diminution in value, are not considered property damage”).